NO. 07-02-0363-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



SEPTEMBER 19, 2002



______________________________




NOEL L. TAYLOR, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;



NO. 43,185-D; HONORABLE DON EMERSON, JUDGE



_______________________________



Before REAVIS and JOHNSON, JJ., and BOYD, SJ. (1)

ON ABATEMENT AND REMAND


 Appellant Noel L. Taylor seeks to appeal from his conviction for the offense of
robbery by filing a pro se notice of appeal on August 30, 2002. No clerk's record has been
filed. Appellant, who is incarcerated, has now filed a motion requesting appointment of
counsel to prosecute his appeal.

 Accordingly, we abate the appeal and remand the case to the trial court. Upon
remand, the trial court is directed to: (1) immediately cause notice to be given and conduct
a hearing to determine whether appellant is indigent; (2) appoint counsel to represent
appellant on appeal if he is determined to be indigent; (3) determine whether appellant is
entitled to have the clerk's record furnished without charge; (4) make appropriate orders
to assure that the clerk's record will be promptly filed if appellant is determined to be
entitled to have the clerk's record furnished without charge; (5) make and file appropriate
findings of fact and conclusions of law and cause them to be included in a clerk's record;
(6) cause the hearing proceedings to be transcribed and included in a reporter's record;
and (7) have a record of the proceedings made and forwarded to the clerk of this court to
the extent any of the proceedings are not included in the clerk's or reporter's records. In
the absence of a request for extension of time from the trial court, the clerk's record on
remand, reporter's record of the hearing and proceedings pursuant to this order, and any
additional proceeding records, including any orders, findings, conclusions and
recommendations, are to be forwarded to the clerk of this court not later than October 21,
2002.

 It is so ordered.


 Per Curiam

Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. 



ION, 

                                                                                                           Appellant

v.

RENETTA POOLE & WALTER POOLE, 

                                                                                                           Appellees
_________________________________

FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY;

NO. D-1-GN-06-003747; HON. STEPHEN YELENOSKY, PRESIDING
_______________________________

Opinion
_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
          The young boy looked at his grandfather and asked: “What is it?” “What do you
think,” came the reply. “Well . . . it has a beak . . . and, it’s feet are webbed . . . it also laid
eggs . . . maybe a duck . . .?” “What else do you see,?” asked the old man. “Fur and a
beaver tail . . . so maybe it isn’t a duck.” “You’re right” said the granddad, “it’s a platypus.” 
“A platypus . . . ,?” queried the boy, “what’s that?” Granddad hesitated a bit, rubbed his
chin, and answered: “You got me . . . .”
          Dealing with our own platypus, we have been asked what is it and what can it do. 
Though the object of inquiry is a creature, it is not an animal created by God. Rather, it is
some type of entity manufactured from the hands and minds of our Texas legislators. 
Having some earmarks of a governmental agency, its membership nonetheless is
composed of private insurance companies. Those companies pick the officers who run the
thing, but those officers must do so under the supervision of the Texas Department of
Insurance. What we determine it to be helps resolve the question of whether it may initiate
lawsuits to protect its interests. The trial court along with Renetta and Walter Poole say
it cannot. The Texas Windstorm Insurance Association (Association) says it can. With
this, we dive into the waters with our platypus, inspect its characteristics, and ultimately
side with the Association. 
Background
          In 2005, Hurricane Rita hit the Pooles’ home located in Port Arthur, Texas. The
Pooles had an insurance policy issued by the Association and filed a claim for roof
damage. The Association paid a total of $12,472.75 to repair the damage, but that was
not the last it would hear from the Pooles. Indeed, approximately eight months later, it
received a letter from a public adjuster advising it that the Pooles disagreed with its
assessment of their claim, and they requested that an appraisal of the property be
undertaken under the policy terms. The Association believed that it was not obligated to
undertake such measures and eventually filed a petition seeking declaratory relief on the
matter. In response, the Pooles moved to dismiss the suit contending that the Association
lacked statutory authority to sue in Texas courts to adjudicate disputes related to their
insurance claims. Only they (the insureds) could do so, according to the Pooles. The trial
court agreed and ultimately dismissed the suit. The Association believed that the trial court
erred and appealed. 
Discussion
          The legislature created the Association as a means of providing property insurance
to people living within geographic areas at risk of being hit by hurricanes. Tex. Ins. Code
Ann. §2210.001 (Vernon Supp. 2007). Its membership consists of all property insurers
authorized to do business in Texas. See id.§2210.051(a). Moreover, the members
participate in the “writings, expenses, profits, and losses of the association . . . .” Id. 
§2210.052(a). Statute further permits the Association to act on behalf of its members with
regard to causing the issuance of insurance to applicants, assuming reinsurance from and
ceding reinsurance to members, and purchasing reinsurance on behalf of members. Id. 
§2210.053(a). And, though it has a board of directors composed of individuals selected
by its membership and nominated by the “office of public insurance counsel,” id.
§2210.102, that board answers to the commissioner of insurance. Id. §2210.101. That
commissioner is also obligated to develop a plan of operation for the entity (which plan
encompasses provisions relating to the administration of the association and others
deemed necessary to implement the association’s purpose), id. §2210.152(a), while the
Department of Insurance may create programs to improve the efficient operation of the
Association. Id. §2210.053(b). And, though members of the Association may participate
in the profits and losses generated by the Association, the entity’s assets revert to the state
upon dissolution of the entity. Id. §2210.056(c)
          As for the plan of operation, it appears in the Texas Administrative Code and
itemizes the powers of the board. The latter, according to §5.4001(b)(2)(L) of title 28 of the
Code, is entrusted with “the management of the business and affairs of the [A]ssociation
and may exercise” both specifically enumerated powers and “all other powers incidental
or appropriate” to the management of the Association’s business and affairs “subject only
to the restrictions imposed by law.” (Emphasis added). Included in the enumerated
powers are, among other things, the authority to establish and change regulations for the
management of the Association’s business affairs, to purchase or acquire property, rights
and privileges for the Association, to appoint and remove Association officers,
representatives and legal counsel, to contract with a “servicing facility” to perform services
“deem[ed] appropriate,” and to “have all other powers and to perform all other duties
reasonably necessary to accomplish the purpose of the Act.” 28 Tex. Admin. Code
§5.4001(b)(2)(L) (2007) (emphasis added). 
          Upon stepping back and contemplating the foregoing indicia, we note that the
Association has attributes of a private insurance business while operating under a
governmental cloak. Its membership comes from the private sector, and those members
are entitled to engage in activities, via the Association, that earn them a profit. Yet, when
all is said and done, the Association’s assets belong to the state. So, what it truly is
escapes easy categorization. Be that as it may, both the legislature and insurance
commissioner nonetheless vested it with powers to sell a type of property insurance and
otherwise engage in that business. More importantly, the powers vested are rather
pervasive and encompass not only all those “incidental and appropriate” to the
management of the business but also those “reasonably necessary” to the accomplishment
of the Association’s purpose, that purpose being the provision of “adequate windstorm,
hail, and fire insurance” to particular sectors of our state. Tex. Ins. Code Ann. §2210.001
(Vernon Supp. 2007); see Texas Catastrophe Property Ins. Ass'n v. Council of Co-Owners
of Saida II Towers Condominium Ass'n, 706 S.W.2d 644, 645 (Tex.1986) (noting that the
predecessor to the Association served the purpose of making windstorm insurance
available in designated portions of Texas where the risk of hurricane was great). 
Furthermore, we find it difficult to picture a scenario wherein an entity authorized to acquire
property, execute contracts, hire and fire personnel, collect and disburse monies, and
otherwise delve into the insurance business will avoid legal entanglements necessitating
resolution. While it is likely that many of those entanglements can and will be resolved
without the intervention of third parties, believing that all will so be ended is, quite frankly,
unrealistic and unreasonable. Indeed, finding success in the realm of business is often
dependent upon the ability to petition the state’s judiciary to resolve disputes that defy
private disposition. Consequently, to deprive the Association of this opportunity would be
tantamount to placing an obstacle before it that does not stand before like businesses, and
that obstacle could only but impede its ability to fulfill the purpose or charge placed on it
by the legislature. 
          So, in view of the realities of today’s business world, it would seem that the ability
to petition the state’s judicial system for assistance from time to time is not only appropriate
to the conduct of the Association’s business but also reasonably necessary to the
accomplishment of its mandated purpose. So concluding contravenes nothing expressly
stated in its enabling legislation; that is, the latter says nothing about the Association being
barred from initiating a lawsuit. Nor do we read §2210.552(a) as implicitly prohibiting that
which the statute does not prohibit explicitly, as the Pooles contend. 
          According to §2210.552(a), an insured “aggrieved by an act, ruling, or decision of
the association relating to the payment of, the amount of, or the denial of a claim” may sue
the Association or appeal the decision to the insurance commissioner and eventually to a
district court. Read in context, the passage does little more than inform an insured of the
avenues of redress available if it was aggrieved by an act or decision of the Association. 
It says nothing about the avenues available to the Association should the insured do
something that aggrieves the Association, much less suggest that the Association would
be restricted to simply petitioning the Texas Commissioner of Insurance. Rather, by
enacting §2210.552(a), the legislature seems to be relieving an insured from first
exhausting whatever administrative remedies he may have under the circumstances
mentioned. Indeed, the statutory procedures give an insured the choice of either
presenting the dispute to the Commissioner of Insurance, Tex. Ins. Code Ann.
§§2210.551(b) & 2210.552(a)(2) (Vernon Supp. 2007), or suing in a district court. Id. §
2210.552(a)(1). But, it cannot do both. Id. §2210.552(b). 
          So, upon assigning the words of §2210.552(a) their plain meaning and in reading
the provision in context, Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d
482, 484 (Tex. 1998) (requiring that a statute be so read), we cannot say that it denies the
Association the ability to seek redress through the courts. This is not to say, however, that
the Association is free to avoid any obligation to exhaust administrative remedies by first
petitioning the courts. That issue was briefed by neither party and may indeed have
jurisdictional ramifications.


 See e.g. In re Entergy Corp., 142 S.W.3d 316, 321-22 (Tex.
2004) (recognizing that when administrative agencies have exclusive jurisdiction over
particular matters, available administrative remedies must first be exhausted before a court
may exercise its jurisdiction over the issue). 
          Having concluded as we do, we sustain the Association’s issue, reverse the final
order of the trial court dismissing the cause, and remand the proceeding for further action.
 
                                                                           Brian Quinn
                                                                          Chief Justice